## IN THE CIRCUIT COURT OF PHELPS COUNTY, MISSOURI

RHONDA JURGENS,                    )
Individually and on Behalf of       )
All Others Similarly Situated,      )
                                    )
           Plaintiff,        )
                                    )    Case No. _____
    vs.                          )
                                    )
BUILD.COM, INC.                     )
                                    )
           Defendant.        )
                                    )

### ORIGINAL PETITION

COMES NOW Plaintiff Rhonda Jurgens, individually, and on behalf of a class of similarly situated individuals, by and through her attorneys, and for her causes of action against Build.com, Inc., hereby states to the Court as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff brings this class action to seek compensation and other relief under the laws of the state of Missouri for computer tampering, Mo. Rev. Stat. §§ 569.095 and 569.099; the Merchandising Practices Act, § 407.020; common-law invasion of privacy by unreasonable intrusion; and common-law unjust enrichment.

2.    The fact that a merchant routinely discloses customers' credit card details to unrelated third parties would be a material fact under Missouri's Merchandising Practices Act; that is, a reasonable consumer would likely consider the fact important in making a purchasing decision.

3.    However, Defendant did, in fact, routinely disclose its online customers' credit card details to unrelated third parties, and did not tell its customers it was doing so.

1



4.     Instead, when customers bought home improvement goods on Defendant's website, *www.build.com*, Defendant let numerous third parties look over customers' shoulders while they paid for their online purchases.

5.     Defendant did this by tampering with its customers' computers, running third-party scripts on customers' computers while they made credit-card purchases.

6.     The third parties provided web-related services to Defendant, but not services that required disclosure of credit card information.

7.     Defendant's customers had no way of knowing that Defendant was disclosing their credit card information to the third parties or that it was doing so by running other companies' scripts on their computers.

8.     Upon information and belief, Defendant disclosed customers' credit card information in exchange for the third parties' services, or because it did not want to spend the money to build appropriate protections into its web pages, or both.

9.     Plaintiff was one of the customers injured by Defendant's practices, but she was not the only one. Defendant's practice of disclosing its customers' credit card information to unnecessary third parties was built into its web pages, injuring every Missouri customer alike, with every purchase.

10.    As detailed in Plaintiff's allegations in this petition, Defendant's conduct was in violation of Missouri statutory and common law.

11.    Plaintiff brings this action on behalf of herself and similarly situated individuals in the State of Missouri, to recover damages that directly resulted from Defendant's conduct on or after December 30, 2011, and for equitable and injunctive relief.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court.

13.     The amount in controversy is less than $75,000 per Plaintiff and Class Member individually and less than $5,000,000 in the aggregate; indeed, Plaintiff believes and alleges that the total value of her individual claims is, at most, equal to the refund of the purchase price she paid for the *build.com* merchandise she purchased.

14.     Moreover, because the value of Plaintiff's claims is typical of all Class Members with respect to the value of the claims, the total damages of Plaintiff and Class Members, inclusive of costs and attorneys' fees, will not exceed $4,999,999, and is far less than the five million dollar ($5,000,000) minimum threshold to create federal court jurisdiction.

15.     Defendant cannot plausibly allege that it had sufficient sales of clothing, luggage, and home furnishings for personal, household, or family use to Missouri citizens during the Class Period to establish an amount in controversy that exceeds CAFA's jurisdictional threshold.

16.     Based on the allegations of the foregoing paragraphs, there is no diversity or CAFA jurisdiction for this case.

17.     This Court has personal jurisdiction over Defendant pursuant to Missouri Rev. Stat. § 506.500, as Defendant has had more than minimum contact with the State of Missouri and has availed itself of the privilege of conducting business in this State. In addition, as explained below, Defendant has committed affirmative tortious acts within the State of Missouri that give rise to civil liability.

18.     This Court has specific jurisdiction over Defendant because Defendant owns and operates the *build.com* website that is the subject of this lawsuit. Through *build.com*, and throughout the Class Period, Defendant has deliberately targeted and exploited Missouri

3

residents and their computers, computer programs, and private data. This case arises out of and relates to that exploitation, in which: Defendant tampered with residents' computers and data; Defendant concealed, suppressed, and omitted material facts regarding its practices; Defendant disclosed residents' credit card information using objectionable methods that unreasonably intruded on residents' privacy and diminished their security; and Defendant retained benefits from giving third parties access to residents' computers and data, and from avoiding the costs of security measures that would have reasonably protected residents' computers and data.

19.     Venue is proper in this forum pursuant to Missouri Revised Statues § 407.025.1 and § 508.010 because the transactions complained of occurred in Phelps County, Missouri and Plaintiff was first injured in Phelps County, Missouri.

## PARTIES

20.     Plaintiff Rhonda Jurgens is a citizen and adult resident of Phelps County, Missouri. Within the five years preceding the filing of the Original Petition in this matter, Plaintiff accessed Defendant's website, *www.build.com* (also known as *www.build-charge.com*), and used her credit card to purchase merchandise that Defendant advertised and sold on the website.

21.     Defendant Build.com, Inc. is a California corporation headquartered at 402 Otterson Drive, Suite 100, Chino, California 95928 and with CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833 designated as its agent for service of process. Defendant is commercial provider of professional and consumer products and services including and relating to the purchase and delivery of floral arrangements, decorative plans, foodstuff gifts, and other gift items. Defendant offers these products and

4

services through interstate commerce to consumer residents of the State of Missouri through its website, *build.com*, and Defendant has done so through the Class Period.

## ALLEGATIONS OF FACT

### A. Plaintiff's Credit Card Purchase of Defendant's Merchandise

22.     On or about March 29, 2014, in Phelps County, Plaintiff used a computer to visit Defendant's *build.com* website, which is publicly available on the Internet.

23.     On the *build.com* website, Plaintiff saw a page on which Defendant advertised kitchen plumbing hardware that Plaintiff selected to add to her online shopping cart, to purchase primarily for personal, family, or household purposes.

24.     When Plaintiff clicked a button to check out and proceed with her purchase, Defendant displayed a checkout web page ("Payment Page") where Defendant requested that Plaintiff enter her name, address, telephone number, payment card number, expiration date, and security code (collectively, "Credit Card Details"), for a purchase totaling $703.53.

### B. Defendant's Disclosure of Plaintiff's Credit Card Information

25.     As with any web page, a copy of the *build.com* Payment Page was temporarily stored in Plaintiff's browser while it was displayed in her browser window.

26.     As with any web page, the Credit Card Details that Plaintiff input were also temporarily stored in her browser, as part of the temporary copy of the Payment Page on which she had input the information.

27.     Unbeknownst to Plaintiff, in the Payment Page, Defendant included code to download and execute numerous third parties' scripts on her computer.

28.     Defendant executed the third-party scripts behind the scenes while Plaintiff was inputting her Credit Card Details in the Payment Page.

29.     For some third parties, Defendant coded its Payment Page to restrict third-party access to Plaintiff's Credit Card Details.

30.     However, for approximately 16 third parties, Defendant coded its Payment Page to give the third-party scripts unrestricted access to Plaintiff's Credit Card Details temporarily stored in her browser, while she input her payment information on Defendant's Payment Page.

31.     Plaintiff's Credit Card Details temporarily stored in her browser were unencrypted.

32.     Upon information and belief, all or almost all of the third parties with unrestricted access to Plaintiff's Credit Card Details had no legitimate need for them, because the third parties provided no services related to processing credit card payments. (In this petition, these third parties are referred to as "Non-Processors"; their scripts are referred to as "Non-Processor Scripts.")

33.     Instead, upon information and belief, the Non-Processors engaged in activities related to online marketing, such as targeted advertising, user tracking and profiling, web page formatting, website traffic measurement, and social media widgets.

**C.   Privacy and Security Risks of Defendant's Conduct**

34.     If a website operator wants to give a third party all data a user has input on a web page, the typical method would be to do what Defendant did in its interactions with Plaintiff—code the web page to execute a script from the third party, without imposing restrictions on the script's ability access consumer data.

35.     Scripts to disclose an active web page and its associated data are often written in the JavaScript language (they are sometimes referred to as "remote JavaScript inclusions"); through unrestricted JavaScripts, a party gains a high degree of control over a user's interactions

on the web page being displayed in the user's browser, and the party gains access to any data the user inputs on the web page.[1]

36.    The Non-Processor Scripts that Defendant incorporated into its Payment Page were written in JavaScript.

37.    Plaintiff's privacy and security risks were inherently increased when Defendant incorporated unrestricted Non-Processor Scripts in its Payment Page, for reasons that include:

(a)    Plaintiff had no reasonable means of detecting or controlling which third parties were accessing her computer and Card Details through unrestricted JavaScript code.

(b)    Plaintiff had no reasonable means of detecting or controlling what those third parties did with their unrestricted JavaScript code and her Card Details.

(c)    Third parties have been known to use unrestricted JavaScript code to engage in conduct that a reasonable consumer would find objectionable, such as persistently identifying and tracking them through surreptitious techniques such as "fingerprinting" their browsers and typing patterns.

(d)    Third parties have been known to be targets of malicious parties who hacked the third parties' JavaScript code, which then infected users' computers.[2]

---

[1] Some well-known, fundamental capabilities of JavaScript include: (a) JavaScript code can read the contents of a web page in the user's browser, including any user information displayed on it or anything the user types on it; (b) JavaScript code can be used detect anything the user does to interact with the page, such as individual keystrokes, mouse movements, and mouse clicks; (c) JavaScript code can access data stored in privileged browser files that are specifically designated for access by the first party, such as cookies for authenticating the user when the user logs in on the website; (d) JavaScript code can be used to collect and assemble unique device identifiers; and (e) JavaScript code can use the browser's Internet connection to upload information acquired from the user's browser to a server on the Internet.

[2] *See, e.g.,* "Syrian "Electronic Army uses Taboola ad to hack Reuters (again)," *https://nakedsecurity. sophos/2014/06/23/syrian-electronic-army-uses-taboola-ad-to-hack-reuters-again* (June 23, 2014); Mattise, N., "Syrian Electronic Army targets Reuters again—but ad network provided the leak" (June 22, 2014), *http://arstechnica.com/security/2014/06/syrian-electronic-army-targets-reuters-again-but-ad-network-provided-the-leak*.

## D.  Defendant's Failures to Give Notice

38.      Defendant did not notify Plaintiff that it would disclose her unencrypted Credit Card Details to Non-Processors while her Credit Card Details were temporarily stored in Plaintiff's browser, before transmission over the Internet.

39.      Defendant did not notify Plaintiff that she could not make payment card purchases on the *build.com* website without having her Credit Card Details disclosed to Non-Processors.

40.      Defendant did not notify Plaintiff that its disclosures of her Credit Card Details to Non-Processors were unnecessary to processing Plaintiff's transactions with Defendant.

41.      Defendant did not notify Plaintiff that its disclosures of her Credit Card Details to Non-Processors unreasonably exposed her to privacy and security risks.

## E.  Defendant's Knowledge and Lack of Authorization

42.      Defendant knew that the Non-Processor Scripts in its Payment Page were unrestricted JavaScripts, because Defendant coded its web pages to execute other party's JavaScripts, but with restrictions.

43.      Upon information and belief, Defendant knew that its execution of the Non-Processor Scripts in its Payment Page would cause Non-Processors to access Plaintiff's computer and disclose her Credit Card Details to Non-Processors.

---

Users' computers have reportedly been infected with malware delivered by compromised ad networks that have included DoubleClick (Google), YieldManager (Yahoo!), rad.msn.com, and Fimserve.com (FOX Audience Network), affecting users' who visited sites that included the New York Times, London Stock Exchange, Hoovers.com, U.S. News, Tucows.com, The Onion.com, and SpeedTest.net. Zeltser, L., "Malvertising: The Use of Malicious Ads to Install Malware," *http://www.infosecisland.com/ blogview/14371-Malvertising-The-Use-of-Malicious-Ads-to-Install-Malware.html* (June 13, 2011). *See, generally*, Nikiforakis, Nick, Luca Invernizzi, Alexandros Kapravelos, Steven Van Acker, Wouter Joosen, Christopher Kruegel, Frank Piessens, and Giovanni Vigna, "You are what you include: large-scale evaluation of remote javascript inclusions," Proceedings of the 2012 ACM conference on Computer and communications security, ACM, 736 (Oct. 2012).

44.     Plaintiff did not authorize Defendant to cause Non-Processors to access her computer or to disclose her Credit Card Details to them while she input her information on Defendant's Payment Page.

45.     Upon information and belief, Defendant knew that Plaintiff had no reasonable means of detecting Non-Processor Scripts that Defendant executed on her computer, controlling them, understanding their implications for her privacy, security, and ability to be informed in the marketplace.

46.     Defendant had no reasonable grounds to believe Plaintiff had authorized Defendant to cause numerous Non-Processors to access her computer.

47.     Defendant had no reasonable grounds to believe Plaintiff had authorized Defendant to disclose her Credit Card Details to Non-Processors who provided no credit card processing services, and where such details included her name; credit card number, expiration date, and security code; street address; telephone number; and e-mail address.

**F.   Defendant's Benefit from its Conduct**

48.     Upon information and belief, Defendant incorporated Non-Processor Scripts in its Payment Page because Defendant wanted the benefits of the services and data that the Non-Processors gave Defendant in exchange for their access to users' computers and data.

49.     In addition, upon information and belief, Defendant incorporated Non-Processor Scripts in its Payment Page so it could avoid the time and expense of coding web pages in a manner that reasonably protected the Plaintiff and Class Members' computers and personal data on those computers.

**G.  Plaintiff's Injuries**

50.     Plaintiff and Class Members, each of them, has sustained losses, injuries, and damages that include but are not limited to:

9

(a)     loss of benefit of bargain, which is the ascertainable amount of the

difference between: the actual value at the time of purchase of the home improvement goods

Plaintiff and Class Members purchased on Defendant's website; and what their value would have

been had Defendant not engaged in conduct that violated computer tampering laws; concealed,

suppressed, and omitted material facts about its sales practices and their consequences for

customers; and unreasonably intruded in the seclusion of Plaintiff and Class Members' private

information;

(b)     the value of Plaintiff and Class Members' data wrongfully disclosed to
third parties;

(c)     the amount of monies Defendant avoided spending on the incorporation of

reasonable privacy and security safeguards in its web page code;

(d)     the value of benefits Defendant unjustly realized from services of third-

party service providers whom it caused to access Plaintiff and Class Members' computers and to

whom it disclosed her private information, including payment card information;

(e)     profits Defendant realized from sales of merchandise through its unlawful

practices alleged in this petition; and

(f)     the increased valuation of Defendant's business attributable to its unlawful

practices alleged in this petition.

51.     Plaintiff is not currently aware of grounds to seek to recover punitive damages or

statutory penalties in this case.

## CLASS ACTION ALLEGATIONS

52.     Defendant's unlawful actions were perpetrated against Plaintiff and Class

Members during the "Class Period," which Plaintiff proposes be defined as starting five years

10

preceding the date of filing of the Original Petition in this matter and extending to the date the Court certifies the Class.

53. Pursuant to Missouri Rule of Civil Procedure § 52.08 and Mo. Rev. Stat. § 407.025.2, Plaintiff brings this action on her own behalf and on behalf of a proposed Class of all other similarly situated persons ("Class Members") defined as:

> all individual Missouri citizens aged 18 years and over who used payment cards to purchase merchandise or services on the *www.build.com* website during the Class Period in or from the State of Missouri, using payment card accounts held in the State of Missouri, or for use in the State of Missouri, where such merchandise was primarily for personal, family, or household uses.

54. Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, without limitation, their legal representatives, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

55. The Class is comprised of so many persons located in the State of Missouri that it would be impractical to bring all members of the Class before the Court individually.

56. There exist questions of law and fact common to all members of the Class. These common questions of law and fact predominate over any individual questions affecting Class Members. Common legal and factual questions include, but are not limited to, the following:

(a) whether Defendant caused Non-Processor Scripts to execute on Plaintiff and Class Members' computers while they input Credit Card Details in the *build.com* Payment Page;

11

(b) whether Defendant caused Non-Processor Scripts to access Plaintiff and Class Members' computers;

(c) whether Defendant was authorized or had reasonable grounds to believe it was authorized to cause Non-Processor Scripts to access Plaintiff and Class Members' computers;

(d) whether Defendant disclosed to Non-Processors the Credit Card Details of Plaintiff and Class Members, on their computers;

(e) whether Defendant was authorized or had reasonable grounds to believe it was authorized to disclose to Non-Processors the Credit Card Details of Plaintiff and Class Members, on their computers;

(f) whether Plaintiff and Class Members had any reasonable means of detecting or controlling Defendant's disclosures of customers' Credit Card Details to Non-Processors;

(g) whether Defendant's disclosures of customers' Credit Card Details to Non-Processors were unnecessary in that the disclosures did not facilitate Plaintiff and Class Members' payments to Defendant;

(h) whether Defendant concealed, suppressed, or omitted material facts regarding Non-Processors' access to Plaintiff and Class Members' computers;

(i) whether Defendant concealed, suppressed, or omitted material facts regarding its disclosure to Non-Processors of the Credit Card Details of Plaintiff and Class Members, on their computers;

12

(j)     whether Defendant fraudulently breached its legal and equitable duties toward Plaintiff and Class Members by violating Missouri laws against computer tampering, unreasonable intrusion upon seclusion, and unjust enrichment;

(k)     whether Plaintiff and Class Members' Credit Card Details were their secret, private, and confidential property and affairs that they had a right to keep private;

(l)     whether Defendant disclosed Plaintiff and Class Members' Credit Card Details to Non-Processors by using methods that would be objectionable to a reasonable person;

(m)     whether Defendant's disclosure of Plaintiff and Class Members' Credit Card Details to Non-Processors unreasonably intruded upon Plaintiff and Class Members' rights of seclusion in their private affairs;

(n)     whether Defendant's disclosures of customers' Credit Card Details to Non-Processors unreasonably exposed Plaintiff and Class Members to privacy and security risks;

(o)     whether Defendant caused Plaintiff and Class Members' computers to be accessed and disclosed their Credit Card Details in exchange for benefits from Non-Processors;

(p)     whether Defendant caused Plaintiff and Class Members' computers to be accessed and disclosed their Credit Card Details in order to avoid expending resources to code its web pages so as to incorporate reasonable security measures to protect Plaintiff and Class Members and their data;

(q)     whether Defendant was unjustly enriched by its causing of access to Plaintiff and Class Members' computers and disclosure of their Credit Card Details to Non-Processors;

(r)     whether Plaintiff and Class Members suffered ascertainable damages as a result of Defendant's suppression, concealments, or omissions of material facts; computer tampering; unreasonable intrusion upon seclusion; and unjust enrichment;

(s)     whether Plaintiff and Class Members were deprived of the benefit of the bargain in purchasing merchandise from Defendant; and

(t)     whether Plaintiff and Class Members are entitled to injunctive and equitable relief.

57.     The claims of the Plaintiff—the proposed class representative—are typical of the claims of the Class in that:

(a)     the web page code Defendant used in carrying out the conduct underlying the claims in this petition was the same or substantially similar for Plaintiff and all Class Members;

(b)     the third parties or types of third parties whom Defendant caused to access Plaintiff and Class Members' computers were substantially the same for Plaintiff and all Class Members;

(c)     the type of data disclosed by Defendant was substantially the same for Plaintiff and all Class Members;

(d)     Plaintiff has suffered damages substantially similar in cause, character, and consequence as those of all Class Members;

(e)     the evidence that will prove Plaintiff's claims on behalf of herself and all Class Members is common, in that all relevant evidence of Defendant's execution of Non-Processor Scripts resides in documents and things, including website code, under the ownership

14

or control of Defendant and other third parties, and no relevant evidence resides on Plaintiff and Class Members' individual devices; and

        (f)     the factual bases and causes of action for the claims Plaintiff asserts are common to all Class Members and represent Defendant's common and automated pattern, plan, and method of misconduct, resulting in injury to all Class Members.

58.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that conflict with the Class, and Plaintiff has retained attorneys who are experienced in the prosecution of complex consumer class action litigation involving computers and the Internet.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members is impracticable and there will be no difficulty in the management of this controversy as a class action.

60.     Prosecuting individual actions would unduly increase the cost of litigation and would cause delay, not only to Plaintiff and Class Members, but also to Defendant and the Court.

61.     In contrast, a class action will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results, and equal protection of the rights of each Plaintiff and Class Member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

62.     Class treatment of the claims asserted by Plaintiff is superior to other methods of adjudicating the claims of the Class in that:

(a)    the prosecution of separate actions by individual members of the class

would create a foreseeable risk of inconsistent or varying adjudications which would establish

incompatible results and standards of conduct for Defendant;

(b)    adjudications with respect to individual members of the Class which

would, as a practical matter, be dispositive of the interests of the other members not parties to the

separate adjudications or would substantially impair or impede her ability to protect her own

interests; and

(c)    class action treatment avoids the waste and duplication inherent in

numerous individual actions and conserves the resources of the Court.

63.    Defendant has acted or refused to act on grounds generally applicable to the

Class.

## COUNT I
### Tampering with Computer Users
### Missouri Revised Statutes § 569.099

64.    Plaintiff restates and incorporates all preceding paragraphs as if fully set out

herein.

65.    Under Mo. Rev. Stat. § 569.099.1(1), a person tampers with computer users if

such person knowingly and without authorization or without reasonable grounds to believe such

person has such authorization, accesses or causes to be accessed any computer, computer system,

or computer network.

66.    The definitions of terms in Mo. Rev. Stat. § 556.03 are applicable to

section 569.099.1(1).

67.    "Computers" and "computer systems" under Mo. Rev. Stat. §§ 569.099.1(1) and

556.03 include, without limitation, the Internet-enabled devices, including mobile devices, that

Plaintiff and Class Members used to purchase merchandise from Defendant through its *build.com* website.

68.    "Property" under Mo. Rev. Stat. § 556.03 includes the computers and computer systems referred to in the preceding paragraph, which were the property of respective Plaintiff and Class Members, who were the owners or lessees of such property.

69.    During the Class Period, Defendant caused Non-Processors to access Plaintiff and Class Members' computers, in that Defendant caused the Non-Processors to download and execute Non-Processor Scripts on Plaintiff and Class Members' computers.

70.    Defendant knew it caused Non-Processors to access Plaintiff and Class Members' computers in that Defendant intentionally coded its web pages to cause such access.

71.    Defendant was not authorized to cause Non-Processors to download and execute Non-Processor Scripts on Plaintiff and Class Members' computers and Defendant had no reasonable grounds to believe it was authorized to do so.

72.    As a direct result of Defendant's conduct alleged in the foregoing paragraphs, Plaintiff and Class Members have been harmed and have suffered damages.

73.    Defendant's conduct alleged in the foregoing paragraphs constituted tampering with computer users in violation of Mo. Rev. Stat. § 569.099.

74.    Under the authority of Mo. Rev. Stat., § 537.525, Plaintiff requests compensatory relief for herself and Class Members for her damages alleged in this petition, and she requests an award of costs and reasonable attorneys' fees incurred with regard to bringing this action.

75.    Defendant's conduct alleged in the foregoing paragraphs has caused Plaintiff and Class Members irreparable injury. Defendant has engaged and continues to engage in this conduct on a routine and automated basis, repeatedly harming Missouri consumers in the same

17

way. Unless restrained and enjoined, Defendant will continue such conduct. Plaintiff and Class

Members' remedy at law is not adequate to provide address such injuries, and Plaintiff requests

injunctive relief and such other equitable relief as the Court deems just and proper.

## COUNT II
### Tampering with Computer Data
### Missouri Revised Statutes § 569.095

76.     Plaintiff restates and incorporates all preceding paragraphs as if fully set out
herein.

77.     Under Mo. Rev. Stat. § 569.095.1(3), a person tampers with computer data if such

person knowingly and without authorization or without reasonable grounds to believe such

person has such authorization, discloses or takes data, programs, or supporting documentation,

residing or existing internal or external to a computer, computer system, or computer network.

78.     The definitions of terms in Mo. Rev. Stat. § 556.03 are applicable to

section 569.095.1(3).

79.     "Data" under Mo. Rev. Stat. §§ 569.095.1(3) and § 556.03 includes, without

limitation, Plaintiff and Class Members' respective Credit Card Details stored in their browsers

while they entered their Credit Card Details on Defendant's Payment Page.

80.     "Programs" or "computer programs" under Mo. Rev. Stat. §§ 556.03 and

569.095.1(3) include, without limitation, the programs comprising the browser software

packages installed on Plaintiff and Class Members' respective computers, related applications,

browser plug-ins and add-ons, and Internet connectivity software.

81.     "Property" under Mo. Rev. Stat. § 556.03 includes the data and computer

programs referred to in the preceding paragraphs, which were the property of respective Plaintiff

and Class Members, who were the owners or lessees of such property.

18

82.     During the Class Period, Defendant disclosed Plaintiff and Class Members' data to Non-Processors; specifically, Defendant disclosed Plaintiff and Class Members' Credit Card Details.

83.     Defendant was not authorized to disclose Plaintiff and Class Members' Credit Card Details to Non-Processors, and Defendant had no reasonable grounds to believe it was authorized to do so.

84.     As a direct result of Defendant's conduct alleged in the foregoing paragraphs, Plaintiff and Class Members have been harmed and have suffered damages.

85.     Defendant's conduct alleged in the foregoing paragraphs constituted tampering with computer data in violation of Mo. Rev. Stat. § 569.095.1(3).

86.     Under the authority of Mo. Rev. Stat., § 537.525, Plaintiff requests compensatory relief for herself and Class Members for damages alleged above in paragraphs 50 and 51, and she requests an award of costs and reasonable attorneys' fees incurred with regard to bringing this action.

87.     Further, Defendant's conduct alleged in the foregoing paragraphs has caused Plaintiff and Class Members irreparable injury. Defendant has engaged and continues to engage in this conduct on a routine and automated basis, repeatedly harming Missouri consumers in the same way. Unless restrained and enjoined, Defendant will continue such conduct. Plaintiff and Class Members' remedy at law is not adequate to provide address such injuries, and Plaintiff request injunctive relief and such other equitable relief as the Court deems just and proper.

## COUNT III
### Violation of the Merchandising Practices Act,
### Missouri Revised Statutes §§ 407.020 and 407.025

88.     Plaintiff restates and incorporates all preceding paragraphs as if fully set out herein.

89.     The Missouri Merchandising Practices Act (the "MMPA"), Mo. Rev. Stat. § 407.020.1, prohibits any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce in or from the State of Missouri.

90.     Mo. Rev. Stat. § 407.025.1 authorizes suit by any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020.

91.     Regulations and definitions relating to enforcement of the MMPA have been promulgated by Attorneys General of the State of Missouri. See 15 CSR 60-9.010, et seq.

92.     Under 15 CSR 60-9.010(1)(C), a material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

93.     The MMPA's purposes include the promotion of fundamental honesty, fair play, and right dealings in public transactions and the regulation of the marketplace to the advantage

of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices. See *Huch v. Charter Communications, Inc.,* 290 S.W.3d 721, 725-26 (Mo. banc 2009).

94.     During the Class Period, Plaintiff and Class Members purchased merchandise that Defendant advertised and sold in trade or commerce in the State of Missouri; specifically, on Defendant's *build.com* website, Defendant offered and sold home improvement goods, which were objects, wares, or goods, and which Plaintiff and Class Members purchased using their payment cards, primarily for personal, family, or household purposes.

95.     In connection with Defendant's advertising and sale of products on the *build.com* website to Plaintiff and Class Members, at the time of their purchases, Defendant engaged in the concealment, suppression, or omission of material facts, including those alleged above in paragraphs 34 through 37.

96.     In connection with Defendant's advertising and sale of products on the *build.com* website to Plaintiff and Class Members, Defendant engaged in fraud under Mo. Rev. Stat § 407.020.1, in that Defendant's acts and omissions were injurious to Plaintiff and Class Members and involved breaches of its legal and equitable duties, including Defendant's independently unlawful conduct under Mo. Rev. Stat. § 569.099.1(1) (tampering with computer users); Mo. Rev. Stat. § 569.095.1(3) (tampering with computer data); common-law invasion of privacy by unreasonable intrusion; and common-law unjust enrichment.

97.     Defendants' concealment, suppression, or omission of material facts alleged in this petition would likely be considered important to a reasonable consumer in making a decision to patronize *build.com* and make purchases there, including because: the material facts would

21

likely affect a reasonable consumer's expectations and rights regarding the privacy and security of the consumers' computers and Credit Card Details.

98.     Further, Defendants' concealment, suppression, omission, or of material facts alleged in the foregoing paragraphs would likely induce a reasonable consumer to change his or her behavior in a substantial manner, including because: the material facts would likely affect Defendant's reputation for trustworthiness in the marketplace; and the material facts would likely bear on the consumer's decision whether to continue to do business with Defendant online, only by telephone or hardcopy mail, or not at all.

99.     As a direct result of Defendant's conduct, Plaintiff and Class Members sustained damages as alleged in this petition, including ascertainable losses of money or personal property.

100.    Defendant's acts and practices alleged in the foregoing paragraphs violated the MMPA.

101.    As authorized under Mo. Rev. Stat., § 407.025.1, Plaintiff requests compensatory relief for herself and Class Members for their damages alleged above in paragraphs 50 and 51, and that such award of compensatory damages be in addition to any other relief obtained by Plaintiff and Class Members.

102.    As authorized under Mo. Rev. Stat., § 407.025.1 and .2, Plaintiff requests an award of costs and reasonable attorneys' fees incurred with regard to bringing this action.

103.    Further, Defendant's conduct alleged in the foregoing paragraphs has caused Plaintiff and Class Members irreparable injury. Defendant has engaged and continues to engage in this conduct on a routine and automated basis, repeatedly harming Missouri consumers in the same way. Unless restrained and enjoined, Defendant will continue such conduct. As authorized

under Mo. Rev. Stat., § 407.025.2, Plaintiff request injunctive relief, and Plaintiff further request such other equitable relief as the Court deems just and proper.

## COUNT IV
### Common-Law Invasion of Privacy by Unreasonable Intrusion

104.    Plaintiff restates and incorporates all preceding paragraphs as if fully set out herein.

105.    Plaintiff and Class Members' Credit Card Detail data and other Computer Resources were Plaintiff and Class Members' secret, private, and confidential property and affairs, which Plaintiff and Class Members' had right to keep private.

106.    Defendant's right to access, use, and disclose Plaintiff and Class Members' Credit Card Detail data and other Computer Resources was limited to the scope and purpose of processing Plaintiff and Class Members' orders for merchandise.

107.    Defendant obtained Plaintiff and Class Members' private information when Defendant disclosed their Credit Card Details to Non-Processors.

108.    Defendant disclosed Plaintiff and Class Members' Credit Card Details to Non-Processors by using methods that would be objectionable to a reasonable person for any and all of the following reasons:

(a)    Defendant's methods were unexpected and could not be reasonably detected or controlled by Plaintiff and Class Members.

(b)    Defendant's methods unreasonably and unnecessarily exposed Plaintiff and Class Members to privacy and security risks of which Plaintiff and Class Members were unaware, and which they had no means to detect, avoid, or mitigate.

23

(c)     Plaintiff and Class Members trusted Defendant enough to do business with Defendant online, and Defendant exploited them by using their own Computer Resources to harm them and gain benefits for itself.

109.   Defendant knew it was engaging in conduct alleged in the foregoing paragraph.

110.   Defendant knew that its methods would be objectionable to a reasonable person.

111.   Therefore, Defendant's conduct alleged in the foregoing paragraphs constituted invasions of Plaintiff and Class Members' privacy by unreasonable intrusion upon seclusion, under the common law of the State of Missouri.

112.   Defendant's actions directly and proximately caused Plaintiff and Class Members to suffer actual and nominal damages, entitling them to recovery in accordance with Missouri law. More specifically, Plaintiff and Class Members have sustained damages and are entitled to recover for losses, injuries, and damages, including as set forth above in paragraphs 50 and 51.

113.   Further, Defendant's conduct alleged in the foregoing paragraphs has caused Plaintiff and Class Members irreparable injury. Defendant has engaged and continues to engage in this conduct on a routine and automated basis, repeatedly harming Missouri consumers in the same way. Unless restrained and enjoined, Defendant will continue such conduct. Plaintiff and Class Members' remedy at law is not adequate to provide address such injuries, and Plaintiff requests injunctive relief and such other equitable relief as the Court deems just and proper.

## COUNT V
### Common-Law Unjust Enrichment

114.   Plaintiff restates and incorporates all preceding paragraphs as if fully set out herein.

24

115. It is a violation of Missouri common law for a person to be enriched by and retain a benefit at the expense of another, where that person accepts and retains such benefit under inequitable or unjust circumstances.

116. Defendant's causing access of Plaintiff and Class Members' computers and its disclosure of Plaintiff and Class Members' Payment Card Data did not benefit them or serve their interests in any way that outweighed the harm to Plaintiff and Class Members caused by Defendant's conduct.

117. Defendant's accessing and causing access of Plaintiff and Class Members' computers and its disclosure of Plaintiff and Class Members' Payment Card Data did not serve any legitimate purpose of Defendant that outweighed the harm to Plaintiff and Class Members caused by Defendant's conduct.

118. Defendant's causing access of Plaintiff and Class Members' computers and its disclosure of Plaintiff and Class Members' Payment Card Data benefitted Defendant and Non-Processors, in that, upon information and belief: (i) by implementing an insecure Payment Page, Defendant avoided the costs it would have incurred in implementing a Payment Page that reasonably secured its customers' Credit Card Details from disclosure to Non-Processors; and (ii) by implementing insecure web pages and disclosing Plaintiff and Class Members' Credit Card Details to Non-Processors, Defendant received benefits from the Non-Processors.

119. Defendant's conduct alleged in the foregoing paragraphs, and the consequences of that conduct, injured Plaintiff and Class Members, and constitute unjust enrichment under the common law of the State of Missouri.

120. Defendant's conduct alleged in the foregoing paragraphs directly and proximately caused Plaintiff and Class Members to suffer detriment, entitling Plaintiff and Class Members to

25

be afforded equitable remedies of disgorgement or restitution for: (i) the monies Defendant pocketed instead of expending adequate resources to reasonably secure the operation of its Payment Page; and (ii) the value of the benefits Defendant received from Non-Processors to whom it gave access to Plaintiff and Class Members' computers and to whom it disclosed their other Computer Resources, including Credit Card Details; (iii) Defendant's profits and increased business valuation arising from its unlawful practices alleged in this petition; and (iv) the value of Plaintiff and Class Members' data wrongfully disclosed to third parties, regardless of whether that value was realize by Defendant or another party.

121.   Equity cannot in good conscience permit Defendant to be enriched by its conduct while it exploits Missouri consumers—such as Plaintiff and Class Members—and saddles them with wrongful costs, sells them merchandise of diminished value because of the undesirable circumstances of its sale; invades their privacy, puts them at unreasonable risk of privacy and security compromise; and forces them to operate in the dark of a deceptive and non-transparent marketplace where Defendant profits from using their own computers and data against them.

## PUNITIVE DAMAGES

122.   Plaintiff states that she is not currently aware of grounds to seek to recover to punitive or exemplary damages.

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, prays the Court:

      (a)   grant certification of this case as a class action;

      (b)   appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

(c)     award compensatory damages to Plaintiff and the proposed Class in an amount which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class, or, alternatively, require Defendant to disgorge or pay restitution in an amount which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class;

(d)     award pre- and post-judgment interest in an amount which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class;

(e)     award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class;

(f)     enter a permanent injunction restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from engaging in injurious conduct alleged in this petition; and

(g)     grant such other and further relief as the Court deems just and proper.

Dated this 30th day of December, 2016.     Respectfully submitted,

**STEELMAN, GAUNT & HORSEFIELD**

By:    /s/ Stephen F. Gaunt
         Stephen F. Gaunt, #33183
         David L. Steelman, #27334
         Patrick J. Horsefield, #50380
         901 N. Pine Street, Ste. 110
         Rolla, Missouri 65401
         (573) 458-5231; (573) 341-8548 (Fax)
         sgaunt@steelmanandgaunt.com
         dsteelman@steelmanandgaunt.com
         phorsefield@steelmanandgaunt.com

         David A. Stampley (pro hac vice pending)
         **KAMBERLAW, LLC**
         142 West 57th Street
         New York NY 10019
         (212) 920-3072; (212) 202-6364 (Fax)
         dstampley@kamberlaw.com

         COUNSEL FOR PLAINTIFF